**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**April 21, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

In re:  A.H. and J.H.

Nos. 15-0828 & 15-0832 (Mingo County 13-JA-53 & 13-JA-65)

**MEMORANDUM DECISION**

The petitioner T.W.,[1] by counsel Diana Carter Wiedel, and the petitioner S.W., by counsel Susan J. Van Zant, appeal from the Circuit Court of Mingo County's "Order from Preliminary Hearing as to the Amended Petition" entered on July 27, 2015.[2]  The petitioners argue that the circuit court erred by not applying the procedures set forth in the West Virginia Code pertaining to child abuse and neglect proceedings before the court permanently removed two children from their home.  The children's guardian ad litem, Karen S. Hatfield, reports that the immediate removal of the children from the petitioners' home was necessary for the children's safety, but she asserts that an adjudicatory hearing should have thereafter been afforded the petitioners.  The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, responds in support of the circuit court's order.

After a careful consideration of the parties' written and oral arguments, as well as the record on appeal, we conclude the circuit court committed procedural error necessitating that the circuit court's order be reversed, in part, and remanded to the circuit court for further proceedings.  This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and, therefore, is properly decided in a memorandum decision.

---

[1]Because this case involves children and sensitive matters, we follow our practice of using initials to refer to the children and the parties.  *See* W.Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).  The children's biological mother has the same initials as another person, so she will be referred to herein as the "mother."

[2]The "Amended Petition" referred to in the title of the order was the DHHR's second amended abuse and neglect petition.  The petitioners filed separate appeals from that order; their appeals have been consolidated for purposes of argument and decision.

1

## Factual and Procedural History

J.H. was born in November of 2011.[3]  When he was approximately five months old, he was placed in the care of his mother's aunt, T.W., and T.W.'s husband, S.W., who are the petitioners herein.  By order of the Mingo County Family Court entered on July 18, 2012, T.W. and S.W. obtained legal guardianship of J.H. pursuant to the provisions of West Virginia Code § 44-10-3 (2014), the statute providing for appointment of a guardian for a minor child.

The mother had another child, A.H., who was born in June of 2013.  When A.H. was approximately three and one-half weeks old, the mother placed her in the care of T.W. and S.W.  Soon thereafter, on July 18, 2013, T.W. and S.W. filed a pro se petition in the family court seeking to be appointed as A.H.'s legal guardians.[4]

On July 22, 2013, the DHHR filed an abuse and neglect petition against the mother and the children's respective biological fathers.  The fathers were absent from the children's lives.  The DHHR alleged that the mother engaged in abusive and neglectful behavior toward A.H. and failed to comply with a voluntary case plan established a few days after A.H.'s birth.  Although the July 22nd petition listed only the infant A.H. as a subject child in the case, the petition was later amended to also include J.H.  As the children's guardians/custodians, S.W. and T.W. were permitted to intervene and participate in the abuse and neglect case.  During the pendency of the proceedings against the biological parents, and until the events discussed below, the children continued to reside in the home of S.W. and T.W.

After further proceedings, the circuit court terminated all rights the mother had to both children.  Although the circuit court announced the termination ruling at a dispositional hearing on January 7, 2014, the written order was not entered until July 27, 2015.  In addition, the circuit court terminated all rights of the children's fathers at a hearing held on November 22, 2013, as reflected in a separate written order also entered on July 27, 2015.

---

[3]The DHHR's second amended petition and the circuit court's order incorrectly designate J.H.'s birth year as 2012.

[4]It appears that the petition for legal guardianship of A.H. was not ruled upon.  The abuse and neglect case, which was initiated a few days later, would have deprived the family court of jurisdiction.

The permanency plan for J.H. and A.H. was a private adoption by T.W. and S.W. However, no adoption proceedings were initiated. T.W. testified that they had not begun the adoption process due to the expense of hiring a lawyer. Moreover, the children could not be adopted until the circuit court entered the dispositional orders terminating the biological parents' rights.

Meanwhile, on December 8, 2014, the DHHR filed a second amended petition alleging that S.W. and T.W. had also abused and neglected the children. The circuit court modified the style of the abuse and neglect case to reflect that S.W. and T.W. had become party respondents, appointed them separate counsel, and received testimony at a preliminary hearing on December 15, 2014. The basis for the second amended petition was an episode of violence in the home on October 29, 2014. The evidence presented during the preliminary hearing revealed that S.W. had referred to his current wife, T.W., using his ex-wife's name. An argument ensued that escalated into physical violence, including S.W. punching T.W. in the face and pushing her to the ground. Their daughter's adult boyfriend then intervened in the altercation and inflicted severe injuries upon S.W. The children were in the home at the time: J.H. was in an adjacent room and A.H. was upstairs. As a result of these events, S.W. was criminally charged with domestic assault and domestic battery, while their daughter's boyfriend was charged with unlawful assault. In addition, during the preliminary hearing a DHHR child protective services worker testified that S.W. has a history of domestic violence. T.W. testified that S.W.'s prior acts of domestic violence involved his ex-wife, and the incident on October 29th was the first time he had ever hit her.

The circuit court's ruling was announced during the December 15, 2014, preliminary hearing and was set forth in a written order on July 27, 2015. The court concluded that the immediate removal of the children from T.W. and S.W.'s home was necessary to ensure the children's safety. The court found probable cause to believe that T.W. and S.W. have a volatile relationship that escalated into physical violence wherein S.W. injured T.W.; they live in an unstable environment; they allow an inappropriate adult–their minor daughter's boyfriend–to reside in the home; this environment placed the subject children in imminent danger and at risk of further neglect; and remaining in the home would be contrary to the children's best interests. The circuit court also ruled that T.W. and S.W. had only a "temporary placement" with no parental rights to the subject children, therefore it was not necessary to proceed to an adjudicatory hearing on the allegations against them. T.W. and S.W. appeal this ruling.[5]

---

[5]Pursuant to the ongoing child abuse and neglect case, the children now reside in the home of a different aunt and uncle who wish to adopt them.

## Standard of Review

This Court has a well-established standard of review for abuse and neglect cases:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). With this standard in mind, we consider the parties' arguments.

## Discussion

The circuit court ruled that the petitioners were not entitled to the procedures set forth in the abuse and neglect statutes because they had no parental rights to these children. The petitioners argue they were entitled to an adjudicatory hearing and, if adjudicated as abusive, the other procedures set forth in state law because they were J.H.'s court-ordered legal guardians, and A.H.'s custodians, before any abuse and neglect petition was filed. A review of the abuse and neglect statutes, when applied to the specific facts of this case, supports this argument.

West Virginia Code § 49-6-2(c) (2012),[6] setting forth the right to an adjudicatory hearing, does not limit that right to only "parents." Rather, it provides certain rights to "the party or parties having custodial or other parental rights or responsibilities to the child":

---

[6]We apply the 2012 version of the abuse and neglect statutes to this appeal, as that was the law controlling the circuit court's rulings at the December 2014 hearing. In 2015, the Legislature repealed West Virginia Code §§ 49-1-1 through 49-11-10 and recodified these provisions, with minor changes, into West Virginia Code §§ 49-1-101 through 49-7-304.

In any proceeding pursuant to the provisions of this article, *the party or parties having custodial or other parental rights or responsibilities to the child* shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. The petition shall not be taken as confessed. A transcript or recording shall be made of all proceedings unless waived by all parties to the proceeding. The rules of evidence shall apply. Where relevant, the court shall consider the efforts of the state department [DHHR] to remedy the alleged circumstances. At the conclusion of the hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected and, if applicable, whether the parent, guardian, or custodian is a battered parent, all of which shall be incorporated into the order of the court. The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing proof.

*Id.* (emphasis added). Furthermore, for purposes of child abuse and neglect proceedings, the statutory definitions of "abusing parent," "abused child," and "child abuse and neglect" include guardians and custodians:

(1) "Abused child" means a child whose health or welfare is harmed or threatened by:

(A) A parent, *guardian or custodian* who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home[.]
. . . .

(2) "Abusing parent" means a parent, *guardian or other custodian*, regardless of his or her age, whose conduct, as alleged in the petition charging child abuse or neglect, has been adjudged by the court to constitute child abuse or neglect.
. . . .

(4) "Child abuse and neglect" or "child abuse or neglect" means physical injury, mental or emotional injury, sexual abuse, sexual exploitation, sale or attempted sale or negligent treatment or maltreatment of a child by a parent, *guardian or custodian who is responsible for the child's welfare*, under circumstances which harm or threaten the health and welfare of the child.

5

W.Va. Code § 49-1-3(1), (2), (4) (2012) (emphasis added).  The disposition statute also references custodial and guardianship rights, for example:

> (a)(6) Upon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child, [the court shall] terminate the parental, custodial and guardianship rights and responsibilities of the abusing parent[.]
>         . . . .
> (c) The court may, as an alternative disposition, allow the parents or custodians an improvement period[.]

W.Va. Code § 49-6-5(a)(6), (c) (2012).

Pursuant to the provisions of West Virginia Code § 44-10-3, the petitioners had the court-ordered legal guardianship of J.H. for an entire year *before* the initial abuse and neglect petition was filed.  During that year, the petitioners were entirely responsible for J.H.'s welfare, and they provided all of his care and support.  Furthermore, although there was not enough time for the petitioners to obtain a legal guardianship over the newborn A.H., they already had a legal guardianship over her sibling and their physical custodianship of A.H. was bestowed by the mother before the abuse and neglect petition was filed.  Given these facts, we conclude the petitioners had "custodial or other parental rights or responsibilities to" the children pursuant to the provisions of the adjudication statute, West Virginia Code § 49-6-2(c).  The circuit court was clearly wrong when finding the petitioners had only a "temporary placement."

Our conclusion should not be interpreted to mean that any person with whom a child is placed during the pendency of an abuse and neglect case is entitled to the adjudication and disposition procedures if the child is removed from the placement.  Indeed, it is irrelevant to our decision today that the petitioners retained physical custody of the children during the pendency of the abuse and neglect proceedings against the biological parents.  The key determinative fact is that the petitioners had a legal guardianship over J.H., which they exercised, for a significant period of time before the abuse and neglect case was initiated.  Their custodial relationship with A.H. also pre-dated the filing of the initial petition.

During the December 2014 preliminary hearing, the DHHR presented evidence of a severe incident of domestic violence in the petitioners' home, and the circuit court correctly removed the children due to emergent safety concerns.  However, the court should have then

6

proceeded to accord the petitioners, as the children's guardians/custodians,[7] an adjudicatory hearing. This case must be remanded for the circuit court to comply with the procedures set forth in the abuse and neglect statutes.[8]

### Conclusion

For the foregoing reasons, we affirm the portion of the circuit court's July 27, 2015, "Order from Preliminary Hearing as to the Amended Petition" insofar as the court ruled that the immediate removal of the children from the petitioners' home was necessary to ensure the children's safety. However, we reverse the order to the extent that the court ruled the petitioners were not entitled to an adjudicatory hearing. This case is remanded to the circuit court with instructions to expeditiously hold an adjudicatory hearing. If the circuit court adjudicates one or both of the petitioners as abusing, the court should proceed with whatever post-adjudicatory proceedings and disposition the circuit court finds appropriate.

The Clerk of this Court is directed to issue the mandate order contemporaneously with this memorandum decision.

Affirmed, in part; reversed, in part; and remanded with directions.

---

[7]The petitioners also argue they should receive full procedural rights under the abuse and neglect statutes because, as the only "parents" these children have ever known, they qualify as psychological parents. *See In re Clifford K.*, 217 W.Va. 625, 619 S.E.2d 138 (2005) (recognizing concept of "psychological parent"). Because we have already decided this case by applying the aforementioned statutory language, we need not address the issue of psychological parenting. However, we note that there is no indication in the three appendix records submitted in this consolidated appeal that the petitioners ever asked the circuit court to declare them to be psychological parents. Moreover, in the past we have emphasized that being a psychological parent does not necessarily translate into being awarded custody. *In re N.A.*, 227 W.Va. 458, 469, 711 S.E.2d 280, 291 (2011).

[8]T.W. asserts in a separate assignment of error that the circuit should have required the DHHR to pursue the allegations against her via the filing of a "new and separate" petition, rather than by filing an amended petition in the existing abuse and neglect case. Her argument is undermined, however, because it relies entirely upon language that was removed from a procedural rule when that rule was amended in 2012. The present version of Rule 19(b) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings directs that if new allegations arise after the final adjudicatory hearing, the allegations should be included in an amended petition and the adjudicatory hearing shall be re-opened.

7

**ISSUED:** April 21, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II